## CHARLES SEVIER *v.* A. McWHORTER et al.

An assignment once made and assented to by the assignee, cannot be revoked or annulled at the option of the assignor.

Where S. purchased certain property from B., in the year 1840, and after the

Sevier *v.* McWhorter.

purchase an execution upon a judgment of R. & Co. against B. which had been returned in 1839 "satisfied in full," by the sheriff, and this entry was of record, but was set aside on motion by the court, in 1842, without notice given to S. of the intention of R. & Co. to set aside the return of the sheriff; and S. having purchased the property of B. for a fair and valuable consideration, having no notice at the time of any thing to induce him to believe that the entry of satisfaction on the execution was erroneous:— *Held*, that S. will be protected in his purchase from B. against the levy of the execution upon the property.

ON appeal from the superior court of chancery; Hon. Stephen Cocke, chancellor.

This was a bill filed on the sixth day of December, 1842, and states, that Charles Sevier on the 4th of November, 1840, purchased from John Briscoe thirty-five slaves, and other personal property, took possession and has held the same ever since, and took a bill of sale. On the 11th of January, 1841, he purchased at marshal's sale under execution against Briscoe, 1,200 acres of land, took a deed therefor, and has since retained possession thereof. At the time of his purchase of the personal property, there were no judgments against Briscoe unsatisfied, except a few small ones since paid, and no other liens on the property. The land was sold under the oldest execution against Briscoe. In November 1842, six of said slaves were levied on, under an execution on a judgment in Madison circuit court, for $1,378.33, rendered May 12, 1838, in favor of John M. Ross & Co. against U. B. Oglesby, Thomas Collins, and John Briscoe. A previous execution had issued on said judgment, which was returned February 16, 1839, by the sheriff, satisfied in full. Said return remained among the records of said court in full force, from its date, to the time of Sevier's purchase; and since that time until the May term, 1842, of said court, when on motion of J. M. Ross & Co., without notice to Sevier, said return was set aside, another execution issued thereon, and was levied on the property Sevier had purchased from Briscoe. Sevier believed said judgment had actually been paid, and J. M. Ross & Co., their agents or attorneys, have long since received the money, which he charges to be facts. The receipt of W. R. Chambers on the sheriff's docket for the plaintiff's money and

attorney's tax fee in full, as agent of J. M. Ross & Co., also made a part of the bill, and the letter of attorney of Andrew McWhorter, one of the firm of J. M. Ross & Co. to W. R. Chambers, authorizing him to collect and receipt for said claim. This power of attorney was executed in Hinds county, Mississippi, on the 7th of August, 1837, as appears by its date, constituting W. R. Chambers the agent of J. M. Ross & Co. to collect certain claims then due or about falling due to said Ross & Co. amounting to $16,254, including the said note on Oglesby and others, and to pay the same, when collected, or the proportionate share of said McWhorter on a note in the Commercial Bank of Columbia, S. C., made by James H. McWhorter, William M. Rogers, John S. Sitgreves, Andrew S. Hutchison, Benjamin Chambers, A. McWhorter, and John M. Ross, and further empowering said W. R. Chambers to collect a debt from said Benjamin Chambers of $5,440 due by note, and to apply the whole of said sum to the payment of said note in the said Commercial Bank of Columbia.

Charges that W. R. Chambers, at and before the date of the receipt, was acting as agent of J. M. Ross & Co., who are nonresidents, and charges on information, that Benjamin Chambers, the father of Wm. R., was owner of part or all of the judgment, and thinks it impossible that he would endeavor to annul his son's acts, when done by his authority.

If the said judgment of J. M. Ross & Co. has not been satisfied, it ought to be paid by George Calhoon. Sometime before the 17th of February, 1839, Calhoon agreed with Oglesby the principal debtor, (the other defendants in the judgment being securities,) that he would pay the judgment, in consideration of a tract of land purchased by Calhoon from Oglesby, and it was in consideration of this agreement, and the understanding and belief that Calhoon had complied with it, and paid the judgment, that Briscoe, who held the title to the said tract of land, conveyed the same to Calhoon, Oglesby having purchased the same from Briscoe and sold to Calhoon, and it was only on condition of payment of the judgment in which Briscoe was bound, that he consented to make the conveyance.

The sheriff is in doubtful circumstances, and his remedy

against him for the seizure of his property would be inadequate.
Before the levy was made, the plaintiffs in said judgment were
requested to levy on said tract of land conveyed to Calhoon,
which they refused to do.   Prayer for injunction, and an in-
junction was issued restraining J. M. Ross & Co. and their
agents and attorneys from further proceedings on said judg-
ment against Sevier's property.

A motion was made to dissolve the injunction, which was
overruled.

*Pro confesso* decrees were entered up against all the defend-
ants except George Calhoon, who answered in substance, that
he admits the purchase of the tract of land from Oglesby at
$2,500, and in payment therefor assumed to Flournoy, sheriff,
$2,100, or $2,200, for Oglesby, of the purchase-money, which
Flournoy was to retain of fees and commissions which would
be coming to M. and G. Calhoon, as attorneys at law, in the
said sheriff's hands.   Afterwards, Flournoy told Calhoon that
he had advanced the money for Oglesby on the faith of said
assumpsit.   Soon afterwards, Calhoon left in the hands of
Flournoy the sum of $1,400 and over, collected for Calhoon's
client, which Calhoon advanced to his client.   He regarded,
and still regards this as a full and complete discharge of his as-
sumpsit to Flournoy; denies that he assumed the payment of
the judgment of John M. Ross & Co. to Oglesby; but he paid
more than $2,000 to Flournoy for Oglesby, as part consideration
for the land.   If Oglesby neglected to see to the appropriation,
he ought not to be accountable for the neglect.   The whole
purchase-money except $100, or $200, has been paid.   Oglesby
assigned to Calhoon, Briscoe's title bond for the land; and
Briscoe conveyed without any conditions mentioned; admits
the return of the execution as stated, and the receipt of W.
R. Chambers, as agent of J. M. Ross & Co. of their money,
on the sheriff's docket; had no notice that this payment to
Chambers was not in money.   Briscoe's title bond is dated 9th
of November, 1836, which acknowledges payment of $800, and
covenants to convey in three months.   Oglesby went into pos-
session before the date of said judgment, which he held till sold
to Calhoon, who has held possession ever since.

He denies the jurisdiction of the court to decree against him. In an amended bill he states he assumed to Flournoy, besides the amount of the execution of Ross & Co., one E. D. Ward & Co. against Oglesby, for $114.61, and one in the name of Gilmer & Webb, for $359.13 and interest. He files copies, affidavits, and agreements of counsel showing this fact; states that the forthcoming bonds in all these cases were forfeited on the same day, and that Flournoy paid the two last-mentioned cases, and that he paid Flournoy the entire amount of all the cases in full discharge of his assumpsit to Flournoy. He prays for all the benefits of a demurrer to the bill against him, and insists that as he procured the payment of the two last-mentioned judgments, which operated as a lien upon the property, and is in possession of it, that he ought, in any event, to be subrogated to the liens under them, and that as his liens are equal to that of Ross & Co., (if they have any, which he denies,) the property ought to be liable to them first.

Charles Sevier sold the principal portion of the property to Wiley Davis, who departed this life in ——. John T. Cameron and Elizabeth Sevier as administrator and administratrix, and Wiley Davis, filed their supplemental bill and bill of revivor, on which process was issued and served upon all the defendants, on which the cause was revived in their names.

Afterwards at the —— term, 184—, Benjamin Chambers moved to set aside the *pro confesso* against him, which was granted, and he thereupon filed his answer, stating that he, Chambers, is ignorant as to Sevier's purchase from Briscoe; believes Briscoe remained in possession of the personal property after the sale, and enjoyed the proceeds of slave labor, at least so far as sufficient for a support of himself and family; believes that Briscoe, since Sevier's death, has remained in possession and enjoyment of the real and personal estate; insists that the sales to Sevier, and by Sevier to Davis, are fraudulent and void as to creditors. He and several others were securities in bank in South Carolina for J. M. Ross & Co., and said firm becoming embarrassed and in prospect of insolvency, for the purpose of indemnifying him and their other securities, McWhorter, the active partner of the firm, deposited the note, which is the

foundation of said judgment, with W. R. Chambers, under the power of attorney exhibited in the bill, to be applied to the discharge of the liabilities of himself and his cosecurities. He therefore denies that W. R. Chambers was acting as his agent in the premises. He was the agent of J. M. Ross & Co. under the power of attorney, it is true, for the benefit of himself and others; and further states that he was a non-resident of the State until twelve months since, and ignorant of the proceedings instituted to set aside the sheriff's return on said execution until some time afterwards. W. R. Chambers' receipt was given the 1st of May, 1839, of which he was not apprised until June, 1842, after the return of satisfaction had been set aside, when he was informed by letter from W. R. Chambers of the fact, nor was he apprised of the fact that the sheriff had made a return of satisfaction on the execution, until the receipt of that letter; submits that there has been no wilful laches or neglect, or acquiescence on his part in the correctness of the return, or the receipt given by W. R. Chambers, as he and the other parties in interest were non-residents during the greater part of the time, and the most of whom are still non-residents. In the fall of 1841, J. M. Ross came to this State and took the agency of W. R. Chambers out of his hands; took charge of the claims in the power of attorney enumerated, which remained uncollected, and directed proceedings to be instituted to set aside the said return of satisfaction; denies that he has ever received any part of said judgment, and believes that the other beneficiaries have received no part of it. W. R. Chambers never paid to him or the others the amount so receipted to the sheriff; knows not whether Sevier had notice of the motion; is informed and believes that he and Briscoe were present at the trial; submits that, if the execution should be perpetually enjoined as to the property purchased by Sevier, the court would decree that the tract of land purchased by Calhoon of Oglesby should be liable and subjected to the satisfaction of the judgment.

The chancellor dismissed the bill and dissolved the injunction, from which decree Sevier appealed to this court.

*T. C. Tupper* for appellant.

The long acquiescence of Ross & Co. in the arrangement of their agent in having the judgment entered satisfied, will prevent the appellees from disturbing Sevier, even if it was not paid in constitutional currency. It seems, from the testimony of Flournoy, that on the application of W. R. Chambers, the agent, with the order of plaintiff's attorney for the money in the judgment of Ross & Co., he, Flournoy, settled with him, by receipting him for the amount of said judgment on executions, which he held against the said W. R. Chambers and others; for which said W. R. Chambers, in the name of Ross & Co., gave a receipt in full for the judgment; that W. R. Chambers' debts were thus paid; that he was considered good; and that if he, Flournoy, had collected the money from him, he would have paid the money back to him on said judgment. Thus this arrangement answered the same purpose and had the same effect that an actual payment of the money would have done. And it may reasonably be inferred that W. R. Chambers obtained the order from the plaintiff's attorney to enable him to pay his own debts, then in the form of executions in the hands of the sheriff, and that he paid the attorney the amount of the judgment; there being no proof to the contrary. At any rate, this arrangement was evidently made by the parties in good faith, and considered valid and just, and the long acquiescence of the plaintiff in the judgment, in such arrangement, amounts to a full approval of it. This principle has been repeatedly held by this court. *Anketell* v. *Torrey*, 7 S. & M. 474; *Prewitt* v. *Standifer*, 8 Ib. 493; *Haralson* v. *Holcombe*, 10 Ib. 581. Also by the supreme court of United States. See 2 How. S. C. R. 258.

On this branch of the subject, however, it is objected, that the judgment of the circuit court setting aside the return of satisfaction, while unreversed, must be held conclusive, and that the question as to the correctness of this judgment is *res adjudicata.* This might be true in a controversy between Briscoe and J. M. Ross & Co., or their regular assignees. This is not such a case. So far as Ross & Co. are concerned, the allegations of the bill are all sustained. They, the only parties having a subsisting interest in the judgment, have no part in this

controversy. Chambers does not profess to occupy the relation of an assignee, either legally or equitably. He is neither a party nor a privy in the judgment, and therefore it is not only not conclusive in a controversy with him, but it is not even legitimate evidence of the facts on which that judgment was based. 1 Starkie, 213.

But the sale by Briscoe to Sevier, while the judgment appeared upon the records satisfied, will be protected, even if such satisfaction be afterwards set aside. Freeman, Ch. R. 519.

But on this branch of the subject it is insisted, that the conveyance by Briscoe to Sevier, and by Sevier to Davis, was fraudulent and void as to the creditors of Briscoe, because Briscoe, after the conveyance, remained on the plantation and received a support therefrom.

On this point two questions arise. 1st. Does Benjamin Chambers (who is the only party seeking to attack the conveyance) present himself in such an attitude before the court as will enable him to contest the validity of said conveyance? And, if this question be answered in the affirmative, 2d. Was this conveyance fraudulent and void?

On the first question, the position is undeniable, that to enable a party to contest the validity of a conveyancé, on the ground of a fraud upon creditors, he must not only show that creditors existed, but that he himself is a bonâ fide creditor. A court of equity will not permit a person to impeach a conveyance, unless he shows affirmatively that he has a right to do so, and therefore it is held that a creditor who seeks to contest the validity of a conveyance on the ground of fraud, must have a judgment in full force. Jackson v. Cadwell, 1 Cow. 622; Reid v. Davis, 5 Pick. 388; Miller v. Miller, 23 Maine R. 22; 4 Dev. & Batt. 278; Hastings v. Belknap, 1 Denio, 198; Berryman v. Sullivan, and authorities therein cited, 13 S. & M. 75.

Chambers, therefore; cannot be heard to contest the validity of Briscoe's conveyance, until he has shown himself to be a bonâ fide creditor of Briscoe. This he has not done. It is true, he once had a contingent or collateral interest in the note of Ross & Co. on Oglesby and others, conveyed to him by the power of attorney to W. R. Chambers. But the amount of

38*

that interest is nowhere shown. And he does not allege that he had even that kind of interest in the claim at the time of filing his answer. On the contrary, the statements of the answer itself negative such a presumption. The bill charges from information, that he was the owner, in whole or in part, of the judgment; and that W. R. Chambers was therefore his agent. This is positively denied. He denies that W. R. Chambers was his agent, and shows that he was the agent alone of J. M. Ross & Co., who had the entire control and management of this claim, and who finally, without objection from Benjamin Chambers, revoked the agency of W. R. Chambers, "took the claim into their own hands," and thus annulled all the interest of Benjamin Chambers to this note or judgment. He then proceeds to show what his interest once had been.

Let us examine the facts on this question of interest in Benjamin Chambers. In 1837, Chambers is security for Ross & Co. on a bank debt in South Carolina. Ross & Co. deposit with Chambers' son (W. R. Chambers) a large amount of claims, including the one in controversy, to be collected, and this bank debt to be paid. This was done, be it observed, by a written power of attorney, which conveyed to Benjamin Chambers the only interest ever held by him in the Oglesby note. Chambers manifests no interest whatever in the collection of this note. He makes no inquiries, and knows nothing of its condition for several years, up to June, 1842. And, finally, with the consent (implied at least) of Chambers, Ross & Co., revoke this same power of attorney, resume to themselves the claims uncollected, and thus annul the only act or deed that ever conveyed any interest or claim to Benjamin Chambers. No subsequent assignment or transfer is shown or pretended in any shape. In his answer, Chambers makes no direct claim to the judgment. He alleges neither a legal nor equitable ownership. He does not even deny that it has been paid to Ross & Co., and shows, in himself, no subsisting claim whatever. He repudiates the act of his son, and positively denies that he ever acted as his agent. Under such a state of facts, was there ever before, in any court of justice, a serious attempt made to assume the character of a creditor, and to impeach a convey-

ance between third persons? I venture to affirm, that the history of jurisprudence will not furnish a parallel.

If Chambers really had a valid claim to the note or judgment in controversy, how can we account for his manifest want of interest and attention in its management? He must be regarded as a man of ordinary prudence and sagacity. In truth, he is eminently cautious in his business affairs. Is it because he was willing to rely implicitly on the responsibility of his son, to account to him for the amount of the fund thus used for the payment of his, the son's, debt? And after that son became insolvent, to repudiate his acts, and endeavor to collect the debt again? Another hypothesis, as I have before shown, is far more probable. It is, either that his liabilities in the South Carolina Bank, have been discharged, or that his own large debt to Ross & Co., of $5,440 and interest, as set forth in the power of attorney, equals or exceeds his said liability in bank.

In no view of the subject, therefore, can we regard Chambers as having any present, valid, subsisting claim to the judgment, or as having any right according to law, to contest the validity of Briscoe's conveyance. Besides, if the decree of the chancellor be affirmed, and the injunction dissolved, who, according to the present state of the case, would control the judgment and issue execution thereon? The plaintiffs, Ross & Co., admit that the judgment is satisfied and paid; and no transfer either legal or equitable has been shown to any other person. So that, in fact, no one could justly claim to have the judgment executed; and the effect of a dissolution of the injunction would be a flagrant abuse of the process of law.

If I am correct in the above views, it is wholly unnecessary to inquire into the validity of Briscoe's conveyance. But I will, nevertheless, proceed to the second question, and endeavor to show that the conveyance of Briscoe to Sevier and of Sevier to Davis, was neither fraudulent nor void.

It is well settled, that fraud cannot be presumed. It must be satisfactorily proved; and to constitute a conveyance fraudulent as to creditors, it must appear to have been made with a fraudulent intent, or in the language of our statute, " with an intent to hinder, delay, or defraud creditors." And this intent

must have existed in the minds both of the grantor and grantee. It is the intent of the parties which gives character to the transaction. This principle has been thoroughly discussed and well settled by most of the States, and especially by the supreme court of Massachusetts. *Bridge* v. *Egleston*, 4 Mass. 245 ; *Foster* v. *Hall*, 12 Pick. 89 ; *Johnson* v. *Johnson*, 3 Metcalf, 83.

Is such intent shown on the part of Briscoe, in his conveyance to Sevier? Assuredly not; because not a single debt of Briscoe is shown to have existed at that time or since, which has not been paid. And the situation of the judgment of Ross & Co. at that time positively negatives every presumption, that the conveyance was made to defeat that debt; because all parties believed, and the records of the county showed, that it was paid.

Thus the facts, as disclosed by the pleadings and proof, not only fail to show a fraudulent intent, but they preclude even a presumption of such intent, so far as this judgment is concerned.

But, however numerous the creditors, I still insist that the sale was *bonâ fide* and is unimpeachable. The slaves were purchased by Sevier at private sale in November, 1840, for which he gave their full value, by assuming a debt of Briscoe's in bank of over $8,000, and some other debts, all of which have been since paid, and in January, about two months thereafter, he purchased the plantation at marshal's sale. This sale was public and fair, and Sevier gave the full market price for the land, as is shown by one of Chambers' witnesses, J. P. Clark. Sevier was also fully able to make the purchase, as shown by the testimony of P. J. Briscoe. The purchases appear to have been made in good faith, and no badge of fraud appears to have been connected with them ; nor is any alleged to have existed by Chambers in his answer. But the only ground or badge of fraud, which he alleges, is that Briscoe remained in possession of the place after the sale, and obtained his support therefrom. But, aside from the explanation of this possession by the evidence, showing it to have been as agent of Sevier only, it is now the settled doctrine of this State, that such possession of the premises after a public sale, or sale under execution, are not

*primâ facie* evidence of fraud. *Garland* v. *Chambers*, 11 S. & M. 340; *Foster* v. *Pugh*, 12 Ib. 416; *Ewing* v. *Cargill*, 13 Ib. 79.

It is submitted with confidence, that the decision of the chancellor ought to be reversed on the grounds above stated, and a decree entered perpetuating the injunction.

*Lawson*, for appellees,
Filed no brief in the papers.

Mr. Justice FISHER delivered the opinion of the court.

The appellant filed his bill in the superior court of chancery for the purpose of enjoining the sheriff of Madison county from selling certain slaves, which he had levied upon by virtue of an execution issued upon a judgment rendered in May, 1838, in the circuit court of said county, in favor of John M. Ross & Co. against U. B. Oglesby, John Briscoe, and others. The bill was, upon final hearing, dismissed by the chancellor, and from this decree the appellant has prosecuted his appeal.

The bill, as to John M. Ross & Co., was taken for confessed; and the only points in controversy arise upon the answer of Benjamin Chambers, alleging that the purchase made by the appellant of the slaves from Briscoe was fraudulent and void as to Briscoe's creditors. Admitting, for the sake of argument, the truth of the answer in this respect, the question still presents itself, whether Benjamin Chambers has shown himself to be a creditor of Briscoe, and therefore entitled to make the defence set up in the answer.

The only evidence on this subject is contained in a power of attorney executed by Andrew McWhorter, one of the firm of John M. Ross & Co., in August, 1837, to William R. Chambers, authorizing him to collect the note upon which the judgment was recovered, and to deposit the money in the Bank of Columbia, South Carolina, to be applied in payment of a note made by John M. Ross & Co. and Benjamin Chambers. The only question here to be considered is, whether this stipulation in the power of attorney was an equitable assignment of the note, or of the money, when collected, to Benjamin Chambers. His

own answer disposes of this question. He says that William R. Chambers was not his agent, but the agent of John M. Ross & Co., and that John M. Ross, one of the firm, in the fall of 1841, revoked the agency of William R. Chambers. It is nowhere pretended that Ross had not the power to make this revocation, and to take the business into his own hands. The instrument appears, at least from the conduct of all the parties concerned, to have been treated as an ordinary power of attorney, revocable at the option of John M. Ross & Co. If this were so, then it was in no sense an assignment of either the note or the money when collected to Benjamin Chambers. An assignment once made and assented to by the assignee cannot be recalled or annulled at the option of the assignor.

Under this view of the case, it is not shown that Benjamin Chambers is in any legal or equitable sense a creditor of Briscoe; and the bill having been taken for confessed as to John M. Ross & Co.; the parties who appear to be interested in the judgment, it only remains to inquire whether, conceding the allegations of the bill to be true, the complainant is entitled to a perpetual injunction against the judgment and execution.

The allegations of the bill on this subject are, that Sevier, the complainant, purchased the slaves in controversy from Briscoe, on the 4th of November, 1840, when the record of the circuit court showed that the execution of John M. Ross & Co. had been "satisfied in full;" that this entry was set aside at the spring term, 1842, of said court, without notice to the complainant; that he purchased for a valuable and fair consideration, and had no notice whatever of any fact inducing him to believe that the entry of satisfaction was erroneous, or untrue.

Under this state of facts, admitted as they are by the *pro confesso* entered against John M. Ross & Co. to be true, the complainant ought to be protected in his purchase against the execution and levy upon his property.

Decree of the chancellor to be reversed, and decree here to be entered, perpetually enjoining the defendants below from enforcing the execution or judgment against the complainant or his legal representatives.

A petition for a reargument was filed by the counsel for the appellees in this case, but the court refused a reargument.